IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-504-FL

| | | |
|---|---|---|
| TIMOTHY WIWEL, SHARON WIWEL, and E.W., a minor by and through her parents Timothy and Sharon Wiwel, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | ORDER |
| v. | ) ) | |
| IBM MEDICAL AND DENTAL BENEFIT PLANS FOR REGULAR FULL-TIME AND PART-TIME EMPLOYEES, | ) ) ) ) ) | |
| Defendant. | ) ) | |

Having awarded attorney's fees in plaintiffs' favor without deciding amount due, with benefit now of the parties' briefing germane to that issue, issues raised are ripe for ruling.

## BACKGROUND

The court here incorporates by reference "Background" in order granting partial summary judgment dated March 29, 2017. (DE 91). In response to the court's order, plaintiffs filed a brief seeking attorney's fees in the amount of $102,261.80, for 314.8 hours worked by counsel and paralegals at rates between $135/hr and $425/hr and costs in the amount of $1946.00. Plaintiffs' counsel submitted declarations describing their own credentials and involvement in this case as well as declarations from other attorneys pertaining to market prices for similar legal services in various markets. (DE 92). Defendant filed a brief in opposition to plaintiffs' request seeking to reduce plaintiffs' attorney's fees award to $6,355.84 and award of costs to $1,557.59.

**DISCUSSION**

To determine the proper amount of attorney's fees in litigation involving the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), "[f]irst, the court must 'determine the loadstar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). To calculate the lodestar rate, courts in the Fourth Circuit must consider the twelve Johnson factors. Trimper v. City of Norfolk, 58 F.3d 68, 73–74 (4th Cir. 1995). The factors are:

(1) The time and labor required to litigate the action;
(2) The novelty and difficulty of the questions presented by the action;
(3) The skill required to properly perform the legal service;
(4) The preclusion of other employment opportunities for counsel;
(5) The customary fee for such services;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount in controversy and the results obtained;
(9) The experience, reputation, and ability of the attorney;
(10) The "undesirability" of the case;
(11) The nature and length of the attorney's professional relationship with the client; and
(12) Awards in similar cases.

Id.

After calculating the loadstar figure, the court is then "obliged to 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" McAfee, 738 at 88. Finally, "once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff[,]" Id. While there exists a "strong presumption that the lodestar number represents a reasonable attorney's fee[,]" id. "where the plaintiff acheive[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id.

In the instant matter, plaintiffs' counsel has produced adequate evidence that claimed hourly rates at $400/hour for Mr. Norris's time and $200/hr for Ms. Walton's time are reasonable. That is, in light of the considerable complexity of the instant case, counsel's experience and marketability, the amount in controversy, and ex ante risk of failure counsel assumed in undertaking to represent plaintiffs, based upon the first, second, third, fourth, eighth, ninth, and tenth Johnson factors, counsel's claimed hourly rates are reasonable. See id. Additionally, where affidavits submitted from other attorneys engaged in ERISA litigation establish that nationwide rates and rates charged by attorneys practicing within North Carolina are higher than rates charged by plaintiffs' counsel in the instant matter, plaintiffs' counsel's rates are reasonable in light of the fifth and twelfth Johnson factors. See id; Robinson v. Equifax, 560 F.3d 235, 244 (4th Cir 2009) (requiring specific evidence of prevailing market rates for legal services, such as affidavits of other attorneys with knowledge of market rates). Defendants do not dispute reasonableness of paralegal hourly rates of $135/hr or hourly rates charged by other attorneys who worked on plaintiffs' case in a relatively minor capacity.

Defendants argue that prior ERISA cases in this district disclose that plaintiffs' counsel's rates exceed a reasonable rate in the Eastern District of North Carolina. In support of this contention, defendants cite cases from this district in which partnered attorneys were awarded fees based upon hourly rates between $190/ hour and $300/hour. (DE 96 at 7). However, the four cases defendants cite are, on average, nearly a decade old, see Barnhill Contracting Co. Employee Health Benefit Plan v. Oxendine, No. 7:14-cv-211-FL (E.D.N.C. Apr. 6, 2015); Williams v. Metro Life Ins. Co., No. 5:07-cv-74-D (E.D.N.C. Jan. 2, 2009); Driver v. Nortel Networks, Inc., No. 5:03-cv-86-BR (E.D.N.C. Jun 16, 2004); Unum Life Ins. Co. Of Am. V. Lowman, No. 5:01-cv-891-BO (E.D.N.C.

3

Feb 5, 2003); and the lone recent case from 2015 did not address reasonableness of counsel's hourly rate. Accordingly, defendants have not produced evidence that casts doubt upon information contained in affidavits submitted in support of plaintiffs' request for attorney's fees, which affidavits discuss fees in the current market for legal services and indicate that $400/hr and $200/hr are reasonable fees for services rendered by Mr. Norris and Ms. Walton respectively.

Turning to the number of hours claimed, the court reduces the lodestar amount to take into account two items billed which did not result in success for plaintiffs. Specifically, where plaintiffs bill 6.2 hours for time related to unsuccessful claims against United Behavioral Health, Inc., ("UBH"), said time is not billable.[1] See McAfee, 738 F.3d at 88 (holding that the court is "obliged to 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones'"). Similarly, plaintiffs' now abandoned argument that defendant lost its primary plan document did not contribute to plaintiffs' success. Accordingly, 10.2 hours dedicated to this unsuccessful claim are not billable.[2]

Next, defendants contend that plaintiffs' award should be reduced substantially because plaintiffs' attorneys have engaged in "block billing" whereby it is impossible to allocate counsel's time between successful and unsuccessful claims. As noted above, defendants have identified as unsuccessful claims action against UBH and claims pertaining to defendant's alleged lost benefit plan. Therefore, where UBH was terminated as defendant February 25, 2016, hours billed after that time need not be reduced based upon unsuccessful claims against UBH. Similarly, the record

---

[1] Entries here excluded consist of February 8, 2016, 1.8 hours; February 22, 2016, 2.4 hours; February 23, 2016, 1.2 hours and 0.4 hours; February 24, 2016, 0.3 hours; and February 25, 2016, 0.1 hours. See (Def.'s Ex. A, DE 96-1 at 2).

[2] Entries here excluded consist of May 20, 2016, 4.1 hours and 2.4 hours; May 23, 2016, 3.2 hours; and July 5, 2016, 0.5 hours. (See Def.'s Ex. B, DE 96-2).

discloses that plaintiffs abandoned their argument pertaining to a lost benefit plan after hearing before the magistrate judge January 27, 2017. Therefore, hours billed after that time need not be reduced based upon unsuccessful arguments pertaining to a lost benefit plan.

For the remainder of entries that are block-billed, the court exercises its discretion to reduce block-billed time by 10% for claims against UBH and by another 10% for claims related to a lost benefit plan. Therefore, except as described above, where each of plaintiffs' time-entries contain some degree of block billing, entries before February 25, 2016, shall be reduced by 20% (to account for unsuccessful claims against UBH and argument regarding a lost benefit plan), entries between February 25 and January 27, 2017, shall be reduced by 10% (to account for unsuccessful argument regarding a lost benefit plan), and entries after January 27, 2017, shall not be reduced to account for block billing where all remaining claims contributed to plaintiffs' success.

Defendants contend also that where the court remanded defendant's decision to deny plaintiffs' benefits claims but did not award benefits outright, plaintiffs claims were not fully successful. On this basis, defendants request a 20% reduction to any remaining award not already excluded above. A reasonable discount is warranted where plaintiffs successfully demonstrated defendants' substantive abuse of discretion, but failed to demonstrate that an award of benefits was the proper remedy. In this instance 10% constitutes such reasonable discount where plaintiffs' efforts proved successful in all respects except in establishing necessity of that particular remedy. Therefore, plaintiffs' award shall be reduced in this amount, to reflect degree of success. See McAfee at 88.

Finally, after applying all reductions described above, plaintiffs' final award shall be reduced, as plaintiffs suggest, by an additional 5% to account for any duplication of efforts that may

5

have taken place among plaintiffs' counsel's personnel. Defendants' remaining contentions pertaining to allocation of work between individuals within plaintiffs' counsel's office does not merit further reduction in fees where the allocation of work does not appear unreasonably biased toward highly compensated personnel.

Applying the foregoing holdings results in the following calculations: First, after setting aside time entries clearly dedicated to claims against UBH, plaintiffs have submitted 39 billable entries dated February 25, 2016 or earlier. (See DE 92-1 at 1–7). Multiplying billable hours by relevant personnel rates yields total claimed bill for this time period of $9,096.00. Reduced by 20% to account for block-billed time that may have been spent, in part, on unsuccessful claims, award for this period is reduced to $7,276.80 (before other reductions that follow).

Second, performing a similar calculation for time period between February 29, 2016, and January 27, 2017, yields 113 billable entries dated after February 25, 2016, and on or before January 27, 2017. (See DE 92-2 at 7–19). Again, multiplying billable hours by relevant personnel rates yields total claimed bill for this time period of $73,287.50. Reduced by 10% to account for block-billed time that may have been spent, in part, on unsuccessful claims, award for this period is reduced to $65,958.75 (before other reductions that follow).

Plaintiffs 60 remaining billable time entries following January 27, 2017, (See DE 92-2 at 19–27), multiplied by the relevant personnel rates result in a total award for that period of $21,126.50. As held above, this time need not be reduced to account for block billing where plaintiffs already had abandoned unsuccessful claims before this period began.

Adding awards for the three periods together (after reductions to account for block billing), yields a provisional award of $94,362.05. This provisional award, reduced by 10% to account for

plaintiffs' partial success in obtaining remand but not award of benefits, amounts to $84,925.85. Reduced by another 5%, as plaintiffs suggest, to account for any duplication of efforts among plaintiffs' counsel's personnel, results in fee award of $80,679.55.

Finally, where defendant disputes plaintiffs' entitlement to costs of court in the amount of $1,946.00, but advances no argument in support of said reduction, plaintiffs shall recover $1,946.00 as costs of court.

## CONCLUSION

For the foregoing reasons, the court hereby AWARDS attorney's fees to plaintiffs in the amount of $80,679.55 and costs of court in the amount of $1,946.00. The clerk is DIRECTED to enter judgment consistent with this order.

SO ORDERED, this the 11th day of July, 2017.

LOUISE W. FLANAGAN
United States District Judge